IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| MISS MATTHEW MICHAEL SMITH, | ) |
| Plaintiff, | ) |
| | ) No. 3:23 CV 50226 |
| v. | ) BIVENS ACTION |
| | ) Judge Iain D. Johnson |
| | ) Magistrate Judge Margaret J. Schneider |
| WARDEN D. GONZALEZ, | ) |
| CORRECTIONAL OFFICER M. WINKLER, | ) |
| CORRECTIONAL OFFICER GRENWALD, | ) |
| CORRECTIONAL OFFICER GASTON, | ) |
| CAPTAIN HESS, | ) |
| LIEUTENANT DOUGDALE, | ) |
| CORRECTIONAL OFFICER SCALIA | ) |
| CORRECTIONAL OFFICER Z. SIGMAN | ) |
| Defendants. | ) |

PLAINTIFF MATTHEW MICHAEL SMITH'S FIRST AMENDED COMPLAINT UNDER
UNITED STATES V. BIVENS

Plaintiff, Miss Matthew Michael Smith, by her attorney Ronald J. Clark, in the above-entitled action hereby alleges as follows:

**JURISDICTION**

1. This is a civil action brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 US 388 (1971) and *Carlson v. Green,* 446 US 14 (1980). The Court has jurisdiction over this action pursuant to 28 USC secs. 1331 and 2201, in addition to the Fifth and Eighth Amendments of the United States Constitution.

2. The Plaintiff demands a TRIAL BY JURY.

1

**INTRODUCTION**

3. Plaintiff was incarcerated in Thomson Prison from August 25, 2020 to February 14, 2023, up until Thomson was closed. While she was there, Thomson was under the management of the United States Bureau of Prisons. Thomason itself was under the management, supervision, and control of the Defendant Warden D. Gonzalez. Inmates at Thomson were under what was termed the "Special Management Unit" ("SMU"), a unit supervised and controlled by Defendant D. Gonzalez and staffed by the other individual Defendants listed below.

4. The SMU was unit as well as other correction officers who may not have been actual members of the unit, routinely engaged in violent beating of prisoners, blasting them with pepper spray and locking them in excessively tight hand restraints. This left the Plaintiff as well as others with lacerations and scars. Plaintiff's, as well as others, wrists as well as ankles and abdomen, the scars from these shackles, came to be known as a "Thomson tattoo".

5. The Bureau of Prisons as well as defendant D. Gonzalez also maintained what was called a "restraint room" at Thomson. The "restraint room" contained a concrete block or "bed" on which an inmate was held down, his arms and legs were stretched out and bound to the slab, and held separated for hours and sometimes days with a chain bound tightly around the inmate's torso so he could not move. No food or water was given to them, and they were left to urinate and defecate on themselves and remain lying in their own excrement for hours or days. The Plaintiff, as described below, was placed in the restraint room, and left there for days. Photos taken by the

2

United States Attorneys Office of Thomson Officers holding a man in a four-point restraint with wrists and ankles secured to restrict movement are attached to this complaint as Exhibit Thomson "Restraint Room" photos.

6. Inmates, including the Plaintiff, were routinely housed with violent inmates who would beat and sexually assault them. Complaints, as with Plaintiff here, were met with being punished by being placed in the torture chamber called "Restraint Room" for long excruciating lengths of time and with being placed with inmates who were ordered to rape and assault them. Attempts to complain by inmates about conditions at the prison were destroyed, and inmates, including the Plaintiff were punished by either beatings or subjected to sexual assaults by chosen dangerous inmates in order to ensure no one filed any formal complaints.

7. A further form of punishment by the defendants inflicted on the Plaintiff and other inmates for complaining of conditions was to force an inmate into the cell of a known violent prisoner, and then ordering or bribing that prisoner to sexually assault, beat, kick, or batter the chosen inmate.

8. All of the Defendants participated jointly and severally in the unconstitutional, negligent, malicious, and intentional violations complained of as this complaint. Plaintiff is asking for a judgment of twenty million dollars ($20,000,000) in compensatory damages and twenty million dollars ($20,000,000) in punitive damage, to be entered as to each defendant jointly and severally, for the intended negligent acts, intentional acts, malicious, and unconstitutional violations of her rights under the Fifth and Eighth Amendment of the United States Constitution as well as Illinois Law.

3

## THE PARTIES

### The Plaintiff

9. **Plaintiff, Miss Matthew Michael Smith** is a Transgender Female who is currently incarcerated at the Winnebago County Jail, located at 650 W. State Street, in Rockford, Illinois, Winnebago County. She is there in Federal custody. Her Register Number is 21897-017. She is a United States Citizen and is thus entitled to the Rights and Protections of the Fifth, Sixth, and Eighth Amendments of the Constitution.

10. Between August 25, 2020, and February 14, 2023, the times relevant to this action, Plaintiff was incarcerated in the Thomson Federal Correctional Institution, located in Thomson, Illinois, within the jurisdiction of the United States District for the Northern District of Illinois, Western Division.

11. During this time, she was subjected by the Defendants, Warden D. Gonzalez, Correctional Officer M. Winkler, Correctional Officer Grenwald, Correctional Officer Gaston, Captain Hess, Lieutenant Dougdale, Correctional Officer Scalia, and Correctional Officer Z. Sigman to verbal and physical abuse, intentional infliction of terror and emotional harm and repeated torture. According to United States Justice Department Officials, following an official investigation, Thomson Prison Officials, officers, and its "Special Management Unit," were at all times relevant to this Complaint, the most corrupt prison with the most corrupt, violent, and cruel staff that the Justice Department officials had ever seen.

12. The Federal Bureau of Prisons purchased Thomson from the State of Illinois and thus owned and operated Thomson. Thomson was the employer of the Defendant Warden

Gonzales and the Defendant Officers at that institution. Plaintiff was repeatedly, over the period she was at Thomson, a victim of this corruption, violence, torture, and discriminatory practices at the hands of all the Defendants. Defendant Warden D. GONZALEZ was grossly negligent as the supervisor of all of the Defendants in this case. All the Defendants were under his supervision and control. All were employees of Thomson.

13. The various acts against her were performed by all the Defendants as set out below. The acts set forth in this Complaint against each and every Defendant, are not all of the continuous series and course of conduct of negligent, malicious, intentional, and unconstitutional acts committed by them. It is only a representative sample of the series of unreasonable, unlawful, and cruel and unusual acts of these Defendants. She was subjected to these actions by all Defendants in part based on her transgender status.

**Defendants**

14. **Defendant D. Gonzales**. was the Warden of Thomson for all times relevant to this Complaint. He was aware of, participated in, authorized and condoned the actions taken by correction officer defendants, who he supervised and who inflicted constitutional violations on the Plaintiff. He was grossly negligent in his supervision of all of the other defendants.

15. **Defendant Correctional Officer FNU Winkler** was at all times relevant to this Complaint, an employee of the Bureau of Prisons, and at all times relevant to this Complaint, engaged in continuing actions against Plaintiff demonstrating his hatred of transgender persons and in brutal, abusive and gross negligent actions against the

Plaintiff all in violation of the Illinois Court Law and Fifth and Eighth Amendment of the United States Constitution. He was a member of the prison's "Special Management Unit" under the direction and control of Defendant D. Gonzalez.

16. **Defendant Correctional Officer Grenwald** was at all times relevant to this Complaint, an employee of the Bureau of Prisons, and at all times relevant to this Complaint, engaged in continuing actions against Plaintiff demonstrating his hatred of transgender persons and in brutal, abusive and gross negligent actions against the Plaintiff all in violation of the Illinois Court Law and Fifth and Eighth Amendment of the United States Constitution. He was a member of the prison's "Special Management Unit" under the direction and control of Defendant D. Gonzalez.

17. **Defendant Correctional Officer Gaston** was at all times relevant to this Complaint, an employee of the Bureau of Prisons, and at all times relevant to this Complaint, engaged in continuing actions against Plaintiff demonstrating his hatred of transgender persons and in brutal, abusive and gross negligent actions against the Plaintiff all in violation of the Illinois Court Law and Fifth and Eighth Amendment of the United States Constitution. He was a member of the prison's "Special Management Unit" under the direction and control of Defendant D. Gonzalez.

18. **Defendant Captain Hess** was at all times relevant to this Complaint, an employee of the Bureau of Prisons, and at all times relevant to this Complaint, engaged in continuing actions against Plaintiff demonstrating his hatred of transgender persons and in brutal, abusive and gross negligent actions against the Plaintiff all in violation of the Illinois Court Law and Fifth and Eighth Amendment of the United States Constitution. He was a member of the prison's "Special Management Unit" under the direction and control

of Defendant D. Gonzalez.

19. **<u>Defendant Lieutenant Dougdale</u>** was at all times relevant to this Complaint, an employee of the Bureau of Prisons, and at all times relevant to this Complaint, engaged in continuing actions against Plaintiff demonstrating his hatred of transgender persons and in brutal, abusive and gross negligent actions against the Plaintiff all in violation of the Illinois Court Law and Fifth and Eighth Amendment of the United States Constitution. He was a member of the prison's "Special Management Unit" under the direction and control of Defendant D. Gonzalez.

20. **<u>Correctional Officer Scalia</u>** was at all times relevant to this Complaint, an employee of the Bureau of Prisons, and at all times relevant to this Complaint, engaged in continuing actions against Plaintiff demonstrating his hatred of transgender persons and in brutal, abusive and gross negligent actions against the Plaintiff all in violation of the Illinois Court Law and Fifth and Eighth Amendment of the United States Constitution. He was a member of the prison's "Special Management Unit" under the direction and control of Defendant D. Gonzalez.

21. **<u>Correctional Officer Z. Sigman</u>** was at all times relevant to this Complaint, an employee of the Bureau of Prisons, and at all times relevant to this Complaint, engaged in continuing actions against Plaintiff demonstrating his hatred of transgender persons and in brutal, abusive and gross negligent actions against the Plaintiff all in violation of the Illinois Court Law and Fifth and Eighth Amendment of the United States Constitution. He was a member of the prison's "Special Management Unit" under the direction and control of Defendant D. Gonzalez.

7

**FIRST CAUSE OF ACTION**

**March 13, 2024 Incident in which Plaintiff is forced into a cell with Phillip Webb who raped and assaulted Plaintiff.**

22. Prior March 13, 2021, Plaintiff had been forced to occupy a cell with a dangerous rapist inmate (Phillip Webb). Plaintiff's cell door was open and she was resisting a rape attempt by inmate Webb. Defendant SIGMAN attempted to force Plaintiff back into the cell with Webb. SIGMAN was aware of Webb's past history of assaults and his rape intent as well as Plaintiff's fearful attempt to escape rape. SIGMAN told Plaintiff; "you're going to take your faggot ass back to that cell or I'm gonna fuck you up worse than your celly will" Defendant SIGMAN then threatened to spray mace in Plaintiff's eyes. He went into the cell and SIGMAN told Plaintiff she "had to take whatever my celly had to give me", meaning sexual assault and beating. Defendant SIGMAN then smashed her face into the cell wall causing lacerations and bruising.

23. Defendant SIGMAN and Lieutenant DOUGDALE then took Plaintiff to "restraint room" where she was stretched on the stone table there and beaten  All the while Plaintiff was in restraints and being tortured Defendant SIGMAN was telling Plaintiff that what he was doing to her, he was doing as a result of her transgender status. Plaintiff suffered bruises and severe lacerations to her face and has endured pain and suffering, and emotional distress from the defendant's intentional, deliberate, negligent, unlawful, unconstitutional, and malicious actions.

8

## SECOND CAUSE OF ACTION

**March 29, 2021 Incident Plaintiff is forced to share a cell with inmate who had raped and beaten her in the past. Plaintiff attempts suicide.**

24. On March 29, 2021, Defendant SIGMAN was putting a known dangerous inmate in Plaintiff's cell. The inmate was known to physically assault and beat up his cellmates. This cellmate was used by the Defendant along with other like dangerous inmates, to assault, attack and rape inmates who the defendants wanted to discipline or dissuade from filing complaints. Plaintiff ran from her cell fearing for her welfare. Defendants put Plaintiff in restraints and forced her back into the cell. The inmate assaulted Plaintiff and took her food tray away so Plaintiff could not eat or drink.

25. On the following day, March 30, 2021, Plaintiff put a rope around her neck and jumped off the sink in an unsuccessful attempt to commit suicide.

26. Defendant SIGMAN knew and deliberately intended that Plaintiff would be assaulted by the inmate. Plaintiff endured extreme pain, suffering, and emotional distress which resulted in permanent and long-term emotional damage from the defendant's negligent, intentional, unlawful, deliberate, and malicious actions.

## THIRD CAUSE OF ACTION

**August 25, 2021 Incident in which Plaintiff has been enduring assaults and rape by dangerous inmate Anthony Conway. Defendants destroy complaint and put Plaintiff on concrete slab spread eagle for two days without food and water or access to toilet.**

9

**Plaintiff is blinded by mace gun.**

27. On August 25, 2021, the Plaintiff was incarcerated in the Thomson Federal Correctional Center. During this period, Plaintiff was forced by Defendant WINKLER to live in her cell with inmate Anthony Conway. She had been enduring assaults and violent rapes, which Defendant WINKLER knew. Plaintiff felt that she needed to somehow make a report and inform the administration of the rapes. On that date, between the times of 8:00 A.M. and 11:00 A.M., C/O WINKLER passed by her cell. Inmate Conway was asleep.

28. Defendant WINKLER and other defendants on numerous occasions had displayed hatred for the Plaintiff and their contempt for transgender persons. In spite of WINKLER'S expressed hatred and bias, Plaintiff gave a written statement of what she was enduring to C/O WINKLER. Defendant WINKLER tore the statement up. C/O WINKLER then woke up inmate Conway and told Conway that the Plaintiff was attempting to report him and file a grievance. He ordered Conway to beat the Plaintiff until she bled and stated if he did that, WINKLER would do him (Conway) a favor. Defendant WINKLER left and returned shortly. Conway had beaten the Plaintiff until she bled in accordance with WINKLER'S orders.

29. Defendant WINKLER ordered Conway to hold the Plaintiff against the cell door. Defendant GASTON, who was present with WINKLER, then sprayed mace balls onto the face of the Plaintiff until she was in extreme pain and screaming. She became blinded from the spray.

30. WINKLER removed Plaintiff from her cell. At that time numerous correction officers

10

jumped Plaintiff, who was still blind and could not see. Plaintiff recognized Defendants GRENWALD, GASTON, WINKLER, and L.T. DOUGDALE as they participated in the beating. She had had numerous beatings from those Defendants in the past and recognized their voices.

31. Following the beating, these defendants took Plaintiff to the "restraint room." They did not permit her a shower to wash her face or allow her to change her clothes. She was blind and suffering from the mace balls shot in her face.

32. The "restraint room" is a place that contains a concrete slab with chains and straps on it, which Thomson Correction Officers, including all defendants, under the direction and control of Defendant GONZALEZ use to stretch an inmate's body in four directions by his legs and arms while lying prone on the slab. Another chain was tightened around the Plaintiff's waist as is routinely done in the "restraint room". It was a device that all defendants used and was under the direct supervision, operation, and control of Defendant GONZALEZ.

33. While Plaintiff was in the restraints, Defendant WINKLER broke open a ball from his mace gun, put the powder on Plaintiff's face, and massaged it into cuts in her eyes. Defendant DOUGDLAE was the senior officer supervising and directing this action. Defendants GASTON and GRENWALD were present. They helped in the torture of the Plaintiff and did nothing to prevent it.

34. While WINKLER rubbed the pepper spray mace ball into Plaintiff's face, WINKLER told her that he would punch her teeth out if she told medical personnel or anyone else about what had happened. Plaintiff was too frightened of him to complain and did not.

35. Defendant WINKLER then filed a false incident report stating she kicked him in order

11

to cover up what WINKLER had done. Filing of a false report of some infraction against an inmate in order to falsely claim that a beating or other that had happened was justified. This was the custom and practice at Thomson.

36. Plaintiff was not given food or water during her time in 4-point restraints. She became delirious from thirst after spending 48 hours chained to a concrete slab. Defendants brought a decoy paper bag into the cell but it only contained a few empty Styrofoam cups inside. This was another practice of the Defendants to falsely suggest the inmate had food and water. The inmates at Thomson U.S.P called the empty bags and empty Styrofoam trays "ghost trays" because it was a common practice by the staff when they wanted to starve an inmate for a day or two and have it appear that they had food and water.

37. Plaintiff was not allowed to get up and urinate or defecate while she was in the restraint cell, so she was forced to urinate and defecate on herself while she lay there chained to the concrete block.

38. Defendants individually and jointly engaged in the severe, unlawful, malicious, intentional, and unconstitutional torture and assaults on the Plaintiff which resulted in bodily injury and extreme pain and suffering. Plaintiff suffered lacerations and severe bruising internally and externally along with severe pain, suffering, and mental anguish. She suffers from permanent disabilities and will continue for the balance of her life to suffer mental anguish as well as severe PTSD. The Plaintiff will likely never recover, either physically or mentally from the egregious actions of the Defendants in this case.

12

## **PRAYER FOR RELIEF**

39. Plaintiff respectfully prays that this court assume jurisdiction over this action and issue

a judgment granting Plaintiff:

A. Compensatory Damages in the amount of twenty million dollars ($20,000,000);

B. Punitive damages in the amount of twenty million dollars ($20,000,000);

C. Attorneys' fees and costs as allowable by law, including by the Equal Access

to Justice Act, 28 U.S.C. § 2412; and 42 U.S.C § 1988

D. Such other and further relief as the Court deems just.


Respectfully submitted,

/s/ Ronald J. Clark

_____

Ronald J. Clark, Attorney for Plaintiff

Ronald J. Clark
Attorney for Plaintiff Matthew Michael Smith
1 E. Erie Street
Suite 525-2479
Chicago, Il, 60611

Preferred Address
6176 122nd Avenue
Fennville, MI 49408

Tel. 312 307 0061
Email: ronaldjclarklawyer@gmail.com

13

State of Illinois
County of Winnebago


Ms. Matthew Smith having appeared before me this _____ day of _____, 2024 hereby swears that she is the Plaintiff in the foregoing civil action (No: 3:23CV50226) and that the allegations therein are true and correct.


_____
Ms. Matthew Michael Smith


_____
Clerk of the U.S. District Court or Notary Public